UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BARBARA J. BROWN,

                                        Plaintiff,

             -vs-                                                07-CV-312C

PLP, II and
JOSEPH D. PALERMO,

                                        Defendants.

_____

APPEARANCES:                    WRIGHT, WRIGHT & HAMPTON (EDWARD
                                P. WRIGHT, ESQ., of Counsel), Jamestown,
                                New York, Attorneys for Plaintiff.

                                PHILLIPS LYTLE LLP (MARC W. BROWN,
                                ESQ., of Counsel), Buffalo, New York,
                                Attorneys for Defendants.


**JURISDICTION**

        This case was referred to the undersigned by the Hon. Richard J. Arcara in an

order dated May 30, 2007, for all pretrial matters pursuant to 28 U.S.C. §§ 636(b)(1)(A)

and (B) and for report and recommendation on dispositive motions pursuant to 28

U.S.C. §§ 636(b)(1)(B) and (C) (Item 7).  The case is currently before the court on the

defendants' motion for summary judgment (Item 43).


**BACKGROUND**

        The case was originally brought in New York State Supreme Court, Chautauqua

County, with the filing of a summons and complaint on April 2, 2007.  It was removed to

this court on May 11, 2007 on the basis of diversity in accordance with 28 U.S.C.

§ 1332 (Item 1). The parties are landowners of adjacent parcels in the Town of

Westfield, New York.  The two parcels were once a single, larger parcel owned by Louis

and Joan Vernon and purchased in 1968.  *Id., ¶* 6.  Plaintiff's deed, a copy of which is

annexed to the complaint, was recorded on September 15, 1998.  *Id., ¶* 4.  Defendants

purchased the adjoining parcel on July 19, 2004. *Id., ¶* 5.  Defendants' contend that

their property extends from Lake Road to the shore of Lake Erie, including the beach.

Plaintiff's adjacent parcel does not extend to the shore, but she has a right of way on a

dirt driveway that runs between the two parcels and continues from her property to the

beach.  Plaintiff contends that defendants' property extends only to the "high bank" and

that she owns the beach.  *Id., ¶* 9.  Plaintiff alleges that the defendants have trespassed

on her property by "illegally constructing a beach access road" cutting through the high

bank from their property to the beachfront, destroying her existing access to the beach.

*Id., ¶¶* 10, 12.

On May 25, 2007, defendants filed an answer to the complaint with

counterclaims seeking reformation of the deed based on mutual mistake and adverse

possession (Item 5).  Plaintiff filed an answer to the counterclaims on June 1, 2007

(Item 9).  Thereafter, on December 30, 2008, defendants filed a motion to amend

and/or correct the answer to add a third counterclaim for unjust enrichment (Item 20).

The motion was granted on October 5, 2009 (Item 35) and the amended answer was

filed on October 15, 2009 (Item 38).  Plaintiff filed an amended answer to the

counterclaim on November 30, 2009 (Item 40).

Defendants filed this motion for summary judgment on July 15, 2010 (Item 43). Plaintiff filed a response to the motion on August 25, 2010, which included an attorney's affidavit (Item 52) and an affidavit of the plaintiff (Item 53), but no Memorandum of Law as required by the Local Rules of this District.  Defendants filed a reply memorandum on September 8, 2010 (Item 58).  Oral argument was heard on September 28, 2010. For the reasons that follow, it is respectfully recommended that the defendants' motion for summary judgment be DENIED.


**FACTS**

In 1968, Maxwell and Grace Canfield conveyed a parcel of land in the Town of Westfield to Louis Vernon and his wife, Joan Vernon, "as tenants by the entirety with rights of survivorship" (Item 51, Exh. F).  The property was on Lake Road and a portion of the parcel extended to the "apparent high water line on the shores of Lake Erie." *Id.* A survey of the property reveals an irregularly-shaped plot with substantial frontage on Lake Road.  What is referred to as the "easterly portion" of the property (currently owned by defendants) runs from Lake Road to the shore of Lake Erie in a roughly rectangular shape with approximately 600 feet of frontage on Lake Road.  The "westerly portion" of the property (currently owned by plaintiff) appears considerably smaller, but has more frontage on Lake Road.  There is a rectangular section that extends toward the lake shore, contiguous with the easterly portion of the property, but ends approximately 550 feet from the beach.  Another somewhat triangular section fronts Lake Road to the west.  A house is located on the westerly portion of the property and the two sections are divided by a dirt driveway that extends past the end of the westerly

portion, down the property line of the easterly portion, to the beach (Item 51, Exh. B).

In 1975, the Vernons were divorced (Item 44, Deft. Exh. I).  The property was

deeded from the Vernons as tenants in the entirety to Louis Vernon individually.  That

deed specified that the parcel "extended to the apparent high water mark of Lake Erie .

. . thence easterly along the apparent high water mark of Lake Erie . ., " thus including

the beach in the conveyance (Item 51, Exh. G; Item 44, Deft. Exh. N).  Louis Vernon

then deeded the entire property to Joan Vernon, excepting and reserving the easterly

portion as follows:

> the easterly portion of above described premises **bounded on the north
> by the high bank of Lake Erie** and on the west by the center of a dirt
> road that runs north and south through the center of said premises from a
> point on the northerly line of Lake Road (N.Y. State Route 5) located
> about 600 feet southwesterly from the point of intersection of the northerly
> line of said lake Road and easterly line of Lot 28 to the top of the high
> bank of Lake Erie.

Item 44, Deft. Exh. M (emphasis added).  According to the deed, Louis Vernon did not

include the beach in his reservation of the easterly portion.  The deed also provides that

Louis Vernon granted Joan Vernon an easement "to the easterly one-half of the

aforesaid dirt road for the purpose of ingress and egress to the beach."  *Id.*  Likewise,

Mr. Vernon was granted an easement to the westerly half of the road to access his

property.  *Id.*

At the same time, Louis Vernon conveyed the easterly portion of the property to

himself and his new wife, Judith Vernon.  As with the conveyance to Joan Vernon, the

deed conveyed the entire parcel, but then excepted the westerly portion, described as:

> the westerly portion of said premises bounded on the east by the center of
> a dirt road that runs north and south through the center of said premises
> from a point on the northerly line of Lake Road (N.Y. State Route 5)

located about 600 feet southwesterly from the point of intersection of the
northerly line of said Lake Road and the easterly line of Lot 28 to the top
of the high bank of Lake Erie.

Item 44, Deft. Exh. N.  Significantly, that deed also contains the following exception: "all

that tract or parcel of land that lies between the high bank of Lake Erie and the

apparent high water mark of Lake Erie." *Id.*  Thus, Louis Vernon conveyed, to himself

and Judith Vernon, all of the property, except the westerly portion and the beach.

In support of the defendants' motion for summary judgment, Louis Vernon

submitted an affidavit in which he stated that in 1975, he intended to convey the

westerly portion of the property to Joan Vernon, and to keep the easterly portion for

himself and his new wife, Judith Vernon (Item 44, Deft. Exh. J, ¶ 5).  The tax map,

appended to his affidavit, shows the two parcels, labeled "A" and "B."  The easterly

portion of the property extends to the shore of Lake Erie and is labeled "B."  The

westerly portion is labeled "A."  The tax map does not indicate that the beach is part of

the "A" parcel.  *Id.*  Louis Vernon stated that the deed to Joan Vernon mistakenly "failed

to except and reserve the real property located between the high bank and the high

water mark of Lake Erie." *Id.,* ¶ 6.  Thus, Louis Vernon admits that, according to the

deed, the beach was not included in the reservation of the easterly portion of the

property. *Id.*  Louis Vernon stated that he unequivocally intended to keep the beach as

part of the easterly portion of the property for use by his family and for a business he

intended to develop on the property. *Id.,* ¶¶ 10, 11.  Mr. Vernon stated that he and his

family used the beach from 1975 until he sold the property in 1998.  Specifically, they

used the beach approximately 9 to 10 times each summer for camping, boating, and

5

swimming.  He also improved the property by picking up debris, placing rocks, and planting grass, and paid the taxes on the property.  *Id.,* ¶¶ 14-18.

Joan Vernon submitted an affidavit in which she stated that she was deeded the westerly portion of the property in 1975 as part of the divorce settlement (Item 44, Deft. Exh. L, ¶ 3).  The property she was "intended to receive did not include the Beach Property."  *Id.,* ¶ 6.  Joan Vernon stated that Louis Vernon granted her "a right of way that would allow myself and our daughters to use the Beach Property."  *Id.,* ¶ 7.  Ms. Vernon stated that she left New York State following her divorce.  *Id.,* ¶ 8.  She never used the beach, never paid taxes on the beach, and sold her portion of the property in 1990 to Bryan Brown.  She did not intend her conveyance to Brown to include the beach.  *Id.,* ¶¶ 9-12.

In 1994, Bryan Brown sold the property to Jeffrey Vernon, the son of Louis and Judith Vernon.  In an affidavit, Jeffrey Vernon stated that he understood that he was buying the westerly portion of the property, which did not include the beach property (Item 44, Deft. Exh. P, ¶¶ 11, 12).   He and his family used the beach approximately 9 to 10 times each summer for camping, boating, and swimming.  *Id.,* ¶ 5.  He did not pay taxes on the beach property.  *Id.,* ¶ 13.  In 1998, Jeffrey Vernon sold the property to plaintiff.  He did not intend his conveyance to plaintiff to include the beach property.  *Id.,* ¶ 14.  However, the deed from Jeffrey Vernon to plaintiff states that plaintiff received the entire property, except the easterly portion "bounded on the north by the high bank of Lake Erie."  Item 51, Exh. I.

In 1998, Louis and Judith Vernon sold the easterly portion of the property to David and Stacy Chriest.  The deed from the Vernons to the Chriests is similar to those

6

deeds that divided the property in 1975 in that the entire plot was conveyed and then a

section was reserved.  The Vernons conveyed the entire parcel up to the "high water

mark," except for the westerly portion.[1]   Notably, this deed omitted the reservation of

the property between the high water mark and the high bank.  (Item 44, Deft. Exh. R).

David Chriest stated in an affidavit that the property he purchased from the Vernons

included the beach property.   He and his family regularly used the beach for camping

and swimming approximately two times each summer, and the Chriests paid taxes on

the beachfront property (Item 44, Deft. Exh. Q, ¶¶ 4, 8, 9, 11).

In 2004, the Chriests sold the easterly portion of the property to defendants.

The deed language tracks that of the previous deed from the Vernons to the Chriests.

The entire parcel was conveyed, with the exception of the westerly portion.  Thus, the

beach was purportedly conveyed to defendants and not reserved as in the original

conveyance to Louis and Judith Vernon (Item 44, Deft. Exh. R). Defendant Joseph

Palermo stated in an affidavit that he believed the property he purchased included the

beach (Item 44, Deft. Exh.S, ¶ 4).  Defendants used the property for camping, boating,

and swimming from 2004 through the present.  *Id.,* ¶ 6.  They also paid taxes on the

beach property, which amounted to approximately $300 per year, as a result of a

reassessment and "lake front tax."  *Id.,* ¶ 8.  Defendants spent $181,200 to improve the

access from the easterly portion of the property to the beach.  They contend that

plaintiff did not inform them of her claim to ownership of the beach until the

improvements were substantially completed.  *Id.,* ¶¶ 9 - 14.

---

[1]   According to their deed, the Vernons did not own the entire parcel up to the "high water mark" and thus conveyed something to which they did not have title.

In her deposition, plaintiff testified that, in 1998, she believed she was

purchasing a seven-and-a-half acre property with a two-story house, beach area, and

access road back to the beach (Item 44, Deft. Exh. W, p. 11; Item 51, Exh. L, p. 11).

She stated that, from the time of her purchase until 2004, she walked the beach

approximately five times per week, weather permitting.  *Id.,* p. 25.  In the fall of 2004,

her husband noticed a large mound of dirt near the access road.  *Id.,* pp. 46, 49.  She

telephoned David Chriest to ascertain the name of the current property owner.  David

Chriest informed plaintiff that defendant Palermo was building a new access road down

to the beach.  Plaintiff said that the new access road had destroyed her existing right of

way.  *Id.,* p. 47.  In the spring of 2005, plaintiff spoke with defendants.  *Id.,* p. 53.

Defendants responded with a letter dated July 18, 2005 that advised plaintiff that she

was allowed to use the dirt road to "view the beach and lakefront" from the bank, but

could not use the new access road or the beach without their permission.  *Id.,* p. 54;

Item 51, Exh. O.

In June 2005, plaintiff contacted the New York State Department of

Environmental Conservation ("DEC") regarding the new access road (Item 44, Deft.

Exh. X).  Rebecca Anderson of the DEC stated that she was not aware of plaintiff's

claim of ownership of the beach until May 2006.  *Id.,* ¶¶ 6-7.


**DISCUSSION**

**A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted

where "the pleadings, the discovery and disclosure material on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  A "genuine issue"

exists "if the evidence is such that a reasonable jury could return a verdict for the

non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact

is "material" if it "might affect the outcome of the suit under governing law." *Id.*

In deciding a motion for summary judgment, the evidence and the inferences

drawn from the evidence must be "viewed in the light most favorable to the party

opposing the motion." *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–59 (1970).

Summary judgment is proper "only when reasonable minds could not differ as to the

import of evidence." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).  The function

of the court is not "to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## B.  Mutual Mistake

Defendants seek summary judgment on their counterclaim for reformation of the

deed.  They have offered proof to show that the parties to the 1975 conveyances

intended that the land between the "high bank" and the "high water mark" was to remain

a part of the easterly portion, and that the failure of the deed to so reflect that intent was

the result of a mutual mistake.  "A party seeking reformation must establish, by clear

and convincing evidence, that the writing in question was executed under mutual

mistake or unilateral mistake coupled with fraud." *Herron v. Essex Ins. Co.*, 823

N.Y.S.2d 571, 573 (App. Div. 2006), *lv. dismissed*, 863 N.E.2d 107 (2007);

*Leavitt-Berner Tanning Corp. v. American Home Assur. Co.*, 516 N.Y.S.2d 992, 994

(App. Div.), *lv. denied,* 516 N.E.2d 1222 (1987).  Here,  Louis Vernon and Joan Vernon

have both averred that it was not their intent that Joan Vernon's property would include

the beach. At oral argument, defense counsel referred to the deed language as a

"scrivener's error" that mistakenly failed to except and reserve in the easterly portion of

the property all the land between the high bank and the high water mark.

Examination of the deeds, however, reveals an explicit intent by Louis Vernon to

convey the beach to Joan Vernon. When Louis Vernon divided the property in 1975,

he conveyed the entire property to Joan Vernon, except the easterly portion up to the

high bank along the shore of Lake Erie. In the conveyance to himself and Judith

Vernon, he conveyed the entire property, with the exception of the westerly portion and

that parcel of land between the high bank and the high water mark. Thus, it is clear

from the 1975 conveyances, made at the same time, that Louis Vernon intended to

convey the westerly portion of the property with the house and the beach to Joan

Vernon. He also provided a right-of-way over the dirt road so that Joan Vernon could

access her beach. The deed language directly contradicts the affidavits submitted in

support of the motion for summary judgment.

Upon review of the deeds, it appears that an omission occurred in 1998 when

Louis and Judith Vernon conveyed the property to the Chriests. That deed contains the

exception of the westerly property but does not reflect the reservation of the beach.

Thus, the Vernons purportedly conveyed the beach to the Chriests although, according

to their deed, they did not own it. The deed from the Chriests to the defendants

contains the same conveyance of the beach. Viewed in the light most favorable to the

plaintiff, the deed language in the 1975 conveyances cannot be explained away as a

"scrivener's error." Defendants have failed to establish, by clear and convincing

evidence, that the 1975 deeds were executed under mutual mistake and the motion for summary judgment on this basis should be DENIED.

## C. Adverse Possession

Alternatively, defendants claim ownership of the beach by adverse possession. To establish a claim for adverse possession, a claimant must prove by clear and convincing evidence that his possession was: "(1) hostile and under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required period." *Chion v. Radziul*, 880 N.Y.S.2d 666, 667 (App. Div. 2009) (citing *Walling v. Przybylo*, 851 N.E.2d 1167, 1169 (N.Y. 2006)). "Reduced to its essentials, this means nothing more than that there must be possession in fact of a type that would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period." *Brand v. Prince*, 324 N.E.2d 314, 315 (N.Y. 1974). Here, defendants have not been in possession of the property for the required ten-year period, so they rely on the possession by their predecessors in interest, the Vernons and the Chriests, to show continuous adverse possession since the division of the property in 1975.

Generally, "successive adverse possessions of property omitted from a deed description. . . may be tacked if it appears that the adverse possessor intended to and actually turned over possession of the undescribed part with the portion of the land included in the deed." *Brand,* 324 N.E.2d at 316; *Eddyville Corp. v. Relyea*, 827 N.Y.S.2d 315, 318 (App.Div. 2006). Defendants contend that the Vernons acquired the beach by operation of law in 1985, after ten years of exclusive, actual, open, and hostile possession. The Vernons then conveyed the beach to the Chriests in 1998, who used the beach approximately two times each summer under the assumption that they

rightfully owned the beach. The Chriests then conveyed the property, including the beach, to the defendants in 2004. Thus, the defendants may tack the possession by the Vernons and Chriests to show continuous possession for the requisite time period.

Defendants have offered proof that, beginning in 1975 until the property was sold in 1998, the Vernons actually and openly used the beach property nine to ten times per year for swimming, camping, and boating. Their use was hostile in that it was an invasion of or infringement upon the rights of the owner, Joan Vernon. *See Greenberg v. Sutter,* 684 N.Y.S.2d 571 (App. Div. 1999). The Vernons' use of the beach was also under a claim of right. They used the beach as though they owned it and apparently never acknowledged ownership of the beach by Joan Vernon.[2] Courts have found use of a beach property is "open and notorious" if it is used for bathing, picnics, and all recreational activities for which beach property is seasonally used. *See, e.g., Hammer v. Vanzura,* 2010 WL 5551237, *4 (Mass. Land Ct. December 31, 2010); *Labounty v. Vickers*, 225 N.E.2d 333 (Mass. 1967).

In this matter, the claim of adverse possession by the Vernons is predicated upon an unwritten claim of title. It is not enough that the Vernons simply used the beach for swimming, camping, and boating. Under the law that existed at the time this action was filed, defendants must also establish that the disputed area was either "usually cultivated or improved" or "protected by a substantial enclosure." N.Y. Real Prop. Acts. Law former § 522; *Gorman v. Hess*, 754 N.Y.S.2d 393, 395 (App. Div. 2003); *see also Weinstein Enter., Inc. v. Cappelletti,* 629 N.Y.S.2d 476, 478 (App. Div.

---

[2] As Joan Vernon stated in her affidavit, she left New York State shortly after the conveyance and rented the property until 1990 when she sold it. She never used the beach and was not present to assert any ownership interest in the beach.

1995).  "The requisite character of the acts of improvement sufficient to supply the record owner with notice of an adverse claim will vary with 'the nature and situation of the property and the uses to which it can be applied' and must 'consist of acts such as are usual in the ordinary cultivation and improvement of similar lands by thrifty owners.'" *Gallas v. Duchesne*, 701 N.Y.S.2d 497, 499 (App. Div. 2000) (quoting *Ray v. Beacon Hudson Mtn. Corp.*, 666 N.E.2d 532, 536 (N.Y. 1996)).  The nature of the property is critical to the determination of the degree of possession required to establish adverse possession and "'wild and undeveloped land that is not readily susceptible to habitation, cultivation or improvement does not require the same quality of possession as residential or arable land.'" *Ray v Beacon Hudson Mountain Corp.*, 666 N.E.2d at 536 (quoting 7 Powell, Real Property, Adverse Possession ¶ 1012 [2]).

The central issue is whether the seasonal use of the beach by the Vernons and occasional debris removal, rock placement, and grass planting was "sufficient to convey notice of their adverse claim to the record owner of the property during the disputed time period."  *Robinson v. Robinson*, 825 N.Y.S.2d 277, 280 (App. Div. 2006), *lv. denied,* 863 N.E.2d 112 (2007).  New York courts that have faced this issue generally require some degree of cultivation or improvement, even if the disputed property is "wild and undeveloped."  In *Robinson,* the defendants established adverse possession of a .6-acre parcel of land by showing that they operated a seasonal canoe rental and camping business on the property.  The evidence showed that the defendants :

> placed moveable signage on the property, mowed the grass, cleared
> debris, and planted grass if it was washed out by spring flooding,
> transported boats to the property, kept incidents of the business on the
> site throughout the season, and blocked the use of the property by
> trespassers.  Buses dropped off customers during the season, at the peak

of which up to 50 rafts, canoes and boats disembarked or landed on the property. In addition, plaintiffs installed a road and made rock fire-ring supports at two permanent campsites, which, along with several other sites on an adjacent lot, were used and maintained on the property throughout the summer.

*Robinson,* 825 N.Y.S.2d at 280.  In *Gorman v. Hess*, 754 N.Y.S.2d at 395, the plaintiffs successfully established adverse possession of a lawn area through continuous and seasonal mowing and planting, repairing the lawn after several floods, and marking its border with white rocks and tires.  In *Gallas v. Duchesne*, 701 N.Y.S.2d 497, the defendants raised an issue of fact sufficient to defeat plaintiff's motion for summary judgment regarding their cultivation and improvement of a "relatively unusable parcel of land containing overgrown brush, trees and a ravine."  *Id.,* at 499.  There, the defendants showed that they brought in bulldozers to level the ravine with fill and gravel, grew grass in the area, mowed it, removed trees, and stored metal on the property.

In contrast, in *Yamin v. Daly,* 613 N.Y.S.2d 300 (App. Div. 1994), the defendants failed to establish adverse possession of a disputed parcel which included part of their driveway and a steep embankment adjacent to the plaintiff's fenced-in yard.  With respect to the bank area, "defendants established only that they took reasonable steps to keep the site presentable."  *Id.,* at 301.  When necessary, they trimmed weeds and brush, raked leaves, and removed trash and debris. Two trees were removed, a small area that could support grass was mowed, an occasional plant was added, and some ground cover was at times established.  The only claimed "improvement" of the driveway was winter snow removal and the filling of depressions with gravel as needed. Under those circumstances, the court found that the defendants had not shown an

14

improvement of the bank or the driveway within the contemplation of the New York Real Property Actions and Proceedings Law. Finally, in *City of Tonawanda v. Ellicott Creek Homeowners Ass'n, Inc.*, 449 N.Y.S.2d 116 (App. Div. 1982), *app. dismissed,* 1983 WL 190627 (January 11, 1983), several homeowner-defendants sought to show adverse possession of creek-front land owned by the municipality. The court found that those defendants who simply mowed the grass and planted trees were unable to show cultivation or improvement sufficient for adverse possession. Another defendant used a pre-existing dock and later replaced it with a new dock, erected a light pole, installed a retaining wall along the bank; mowed the grass, and granted another permission to moor his boat at the dock. Those acts of cultivation and improvement were found sufficient to establish adverse possession.

Here, as part of their seasonal use of the beach property, the Vernons claim to have removed debris, placed some rocks, and planted "soil and grass to protect against erosion" (Item 44, Exh. J, ¶ 16). Although it is unclear from the case law what specific improvements would be required to satisfy the statute in the case of beach property, the court concludes that something must be done, beyond mere maintenance, to assert control over the disputed property. There is no proof that the Vernons established a seasonal campsite, dug a fire pit, built a dock, stored boats or equipment, or did anything that would indicate their assertion of ownership consistent with the requirements of the New York Real Property Actions and Proceedings Law. At best, they "took reasonable steps to keep the site presentable," actions which fall short of the required cultivation or improvement contemplated by the statute. *Yamin v. Daly,* 613 N.Y.S.2d at 301. Accordingly, the court finds that defendants have failed to establish,

by clear and convincing evidence, that the Vernons gained ownership of the beach by adverse possession.

Additionally,  even if the court were to tack the possession of the beach by the Chriests to that of the defendants, the Chriests' assertion of ownership of the beach would not satisfy the requirements of adverse possession.  Plaintiff acquired her property from Jeffrey Vernon in 1998, the same year the Chriests acquired the adjoining parcel from Louis and Judith Vernon.  Plaintiff testified that she used the beach approximately five days per week, weather permitting.  David Chriest testified that he and his family used the beach two times each summer.  Thus, the defendants have not shown that the Chriests' use of the beach was exclusive, as required to establish adverse possession.  Accordingly,  the defendants' motion for summary judgment on the basis of adverse possession should be DENIED.

## D.  Trespass

Finally, defendants argue that plaintiff's claim of trespass, the only cause of action in her complaint, must be dismissed as she has not shown an intentional entry onto her property without justification or consent.  They also contend that plaintiff is not entitled to compensatory or punitive damages, or any equitable relief.  Plaintiff argues that defendants have interfered with her right-of-way, destroyed her access to the beach, and have asserted ownership of the beach area, advising her that she may not use the new access road or the beach itself without their permission.

The essence of a trespass, a state law claim, is an injury to the right of possession.  104 N.Y. Jur.2d, Trespass § 10.  The Second Circuit has described this cause of action under New York law as "the interference with a person's right to

16

possession of real property either by an unlawful act or a lawful act performed in an unlawful manner." *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir. 1990) (finding summary judgment on a trespass claim to be appropriate against anti-abortion groups protesting on an abortion clinic's property); *see also Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir.1996) (under New York law, "trespass is the intentional invasion of another's property."). To succeed in an action for trespass, the plaintiff must prove that there was a wrongful or unjustifiable entry upon her land. *Romeo v. Sherry,* 308 F.Supp.2d 128, 143 (E.D.N.Y. 2004).

The defendants argue that plaintiff cannot maintain an action for trespass because their use of the beach was justified. When they took title to the property in 2004, their deed indicated that they owned the beach. While defendants may raise their ownership of the beach as a defense to a claim of trespass, plaintiff has raised genuine issues of material fact regarding ownership of the disputed parcel and defendants have not established their ownership of the beach as a matter of law. Under New York common law, "a person entering upon the land of another without permission, 'whether innocently or by mistake, is a trespasser.'" *Golonka v. Plaza at Latham LLC,* 704 N.Y.S.2d 703, 706 (App. Div. 2000) (quoting 104 N.Y. Jur. 2d, Trespass, § 10, at 454). At this stage of the litigation, the court has not been asked to determine the rightful owner of the beach. It does not appear that either party has commenced an action pursuant to Article 15 of the New York Real Property Actions and Proceedings Law seeking to quiet title to the disputed parcel. Additionally, even if the defendants were to establish a justifiable use of the beach area, plaintiff has asserted that defendants have destroyed her right-of way. Accordingly, the court finds that

plaintiff has raised an issue of fact as to whether defendants entered her property unlawfully, and the defendants' motion for summary judgment dismissing the trespass cause of action should be DENIED.

The court further notes defendants' argument that plaintiff is not entitled to damages for any alleged trespass. The traditional measure of damage to real property due to trespass is the lesser of the diminution in value of the property or the cost to repair. *McDermott v. City of Albany,* 765 N.Y.S.2d 903, 905 (App. Div. 2003), *lv. denied,* 1 N.Y.3d 509 (2004). Plaintiff testified that defendants' construction of the new access road destroyed her right-of-way and existing access to the beach. While the new access road may provide easier access from defendants' property, plaintiff does not enjoy a right-of-way from her property to the new access road. Plaintiff has thus raised an issue of fact regarding the damages that flow from the alleged trespass.

Additionally, defendants contend that plaintiff is not entitled to any equitable relief, as she did not assert her claim to ownership of the beach until the work on the new access road was substantially completed. Plaintiff testified that she promptly contacted the New York State DEC, although it appears that she did not clearly claim ownership of the beach at that time. In any event, she asserted her claim of ownership to the defendants within months of the onset of construction. At this stage of the proceedings, questions of fact remain regarding plaintiff's right to any equitable relief.

Finally, defendants have established that they commenced construction of the new access road in the reasonable belief that they owned the beach. Plaintiff has failed to raise a genuine issue of fact that the defendants "acted with actual malice involving intentional wrongdoing, or that such conduct amounted to a wanton, willful, or reckless

disregard of the party's right of possession." *Doin v. Champlain Bluffs Development Corp.,* 894 N.Y.S.2d 169, 178 (App. Div. 2009), *lv. dismissed,* 14 N.Y.3d 832 (2010). Accordingly, plaintiff has not established that she is entitled to punitive damages.

## CONCLUSION

Based on the foregoing, I recommend that the defendants' motion for summary judgment (Item 43) be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an

extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to counsel for the parties.

SO ORDERED.

DATED:     Buffalo, New York
           June 9, 2011

                                        s/ H. Kenneth Schroeder, Jr.
                                        H. KENNETH SCHROEDER, JR.
                                        United States Magistrate Judge